IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SENIORHEALTH INCORPORATED;<br>FENX HEALTHCARE, INC.;<br>QUESTMARK PARTNERS II, L.P.;<br>QUESTMARK PARTNERS SIDE<br>FUND II, L.P.; FIRST AVENUE<br>PARTNERS II, L.P.; FIRST AVENUE<br>ETC PARTNERS, L.P.;<br>HEALTHMARK VENTURES, LLC;<br>and SAMUEL OWEN | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs/ Counter Defendants, | ) ) | No. 3:10cv366 |
| v. | ) ) | District Judge Nixon |
| GILLIARD HEALTH SERVICES, INC.<br>and WILLIAM G. McKENZIE | ) ) ) ) ) ) | Magistrate Judge Griffin<br><br>JURY DEMAND |
| Defendants/ Counter Plaintiffs. | ) | |

## ANSWER AND COUNTER CLAIMS OF
## GILLIARD HEALTH SERVICES, INC.
## AND WIILLIAM G. McKENZIE

Defendants Gilliard Health Services, Inc. ("Gilliard Health") and William Gilliard McKenzie ("Mr. McKenzie") hereby file their response to the original Plaintiffs' Complaint and file their Counter Claims against all original plaintiffs.

### ANSWER TO ORIGINAL COMPLAINT

1. Paragraph 1 requires no response by the original Defendants, Gilliard Health and Mr. McKenzie.

2. Allegations contained in Paragraph 2 are admitted upon information and belief.

3. Allegations contained in Paragraph 3 are admitted upon information and belief.

4. Admitted.

5. Admitted.

6. Denied. The case has been properly removed from state court to federal district court. Defendants assert that this district court has subject matter jurisdiction.

7. Denied. The case has been properly removed from state court to federal district court. Defendants assert that proper venue is this district court or the District Court for the Southern District of Alabama.

8. Denied. The case has been properly removed from state court to federal district court. Defendants assert that this district court has proper personal jurisdiction.

9. Paragraph 9 requires no response and defendants refer to their responses to Paragraphs 1-8 as set forth in their answer.

10. Admitted, but Gilliard Health and Mr. McKenzie state that this transaction was governed by the Securities Statute of the State of Alabama and that such transaction was for the sale of an unlicensed security and violated Alabama laws.

11. Admitted.

12. Admitted, but such sale constituted the sale of an unregistered security.

13. Admitted that the "Agreement, as amended" stated that the purchase price for the 80% equity interest in River Region Hospital was $1,000,000. The original agreed upon purchase price was $900,000. Defendants deny that the installment payments totaled $1,308,856.68.

14. Admitted that Mr. McKenzie delivered an executed guaranty letter to Plaintiffs. Admitted that the language quoted by Plaintiffs in paragraph 14 is contained in the executed guaranty letter represented by Exhibit B.

15. Exhibit B is a document that speaks for itself and contains language that is subject to the interpretation of this Court. Mr. McKenzie denies that he waived the benefit of any law requiring Plaintiffs rights or remedies against Gilliard Health as seeking to enforce the guaranty agreement against Mr. McKenzie would be an endorsement by the Court of the sale of an unregistered security under pretenses which shall make the original sale null and void.

16. Admitted that the transaction closed on or about July 29, 2009. Admitted that the Plaintiff transferred its 80% equity interest in River Region Hospital to Defendants. Denied that the Plaintiff performed all other required actions under the Agreement, as amended.

17. Admitted.

18. Admitted that the Agreement, as amended, states that Gilliard was required to pay $454,428.34 to the Plaintiff Bridge Lenders on December 31, 2009, but subject to the defenses set forth in the paragraphs contained in the affirmative defenses and counter claims, Defendants are not required to make such payment to Plaintiff Bridge Lenders.

19. Admitted that the Agreement, as amended, states that Gilliard was required to pay $774,428.34 to the Plaintiff Bridge Lenders on June 31, 2010, but subject to the defenses set forth in the paragraphs contained in the affirmative defenses and counter claim, Defendants are not required to make such payment to Plaintiff Bridge Lenders.

20. Admitted that the payment described in Paragraph 20 of the Complaint was not paid by either Defendant, but Defendants are not required to make such payment subject to the defenses set forth in this Answer and claims made in counter claims.

21. Admitted.

22. Admitted that neither Defendant has made the $454,428.34 payment and is denied that such payment should be made.

## BREACH OF CONTRACT

23. Paragraph 23 requires no response.

24. Denied that Plaintiff and Defendants have a valid agreement. Said agreement is voidable and should be rescinded by the parties. Admitted that the 80% interest was transferred to Gilliard.

25. Admitted that Mr. McKenzie executed a guaranty letter agreement, but it is denied that the letter is binding upon Mr. McKenzie.

26. Denied that the Plaintiffs have performed their obligations under the Agreement, as amended.

27. Admitted that the Agreement, as amended, required a payment of $454,428.34 but denied that the Agreement, as amended is valid and enforceable. As such, neither Mr. McKenzie nor Gilliard Health is liable to Plaintiffs for the $454,428.34. Admitted that Mr. McKenzie personally guaranteed Defendant Gilliard Health's performance of this and all other obligations under the Agreement, as amended, but denied that such Agreement, as amended, is valid and enforceable.

28. Admitted that no "installment payment" has been made, but denied that the installment payment is "required" or "mandated" by the contractual arrangements as such are neither valid nor enforceable.

29. Admitted that the "installment payment" has not been made, but denied that it was required and as such, denied that Mr. McKenzie has breached his guaranty letter agreement executed in conjunction with the Agreement, as amended.

30. Denied.

## ANTICIPATORY BREACH

31. Paragraph 31 requires no response.

32. Denied. Denied that the contractual obligations are enforceable.

33. Denied.

34. All allegation neither admitted nor denied are hereby denied.

## AFFIRMATIVE DEFENSES

1. Plaintiffs have failed to state a claim upon which relief may be granted as the agreements between the parties are not valid and enforceable.

2. The Plaintiffs should be estopped from obtaining judgment based upon the facts and allegations contained in the counter claims.

3. The Plaintiffs have committed fraud upon the Defendants and should be prevented from recovering from them based upon the frauds more particularly described in the counter claims filed by Gilliard Health and Mr. McKenzie.

**WHEREFORE,** after having fully responded to the Complaint filed by Plaintiffs, Defendants respectfully request that the Court dismiss the Complaint and award all costs, including attorney fees, to Defendants.

## COUNTER CLAIM

1. Gilliard Health and Mr. McKenzie, now assuming the roles of Counter-Plaintiffs, state the following claims against all original Plaintiffs named in this lawsuit, including but not limited to, Samuel Owen individually and in his capacity as agent for remaining original Plaintiffs/ Counter-Defendants.

## PARTIES

2. All Defendants to this Counter-Claim are Plaintiffs in the original complaint.

## JURISDICTION AND VENUE

3. Jurisdiction and Venue are pursuant to 28 U.S.C. § 1332. This action was removed by Gilliard Health and Mr. McKenzie pursuant to 28 U.S.C. § 1441.

## FACTS

4. During 2009, Mr. McKenzie was introduced to Plaintiff/Counter-Defendant, Samuel Owen ("Mr. Owen") by a third party who believed that Mr. McKenzie might be interested in the sale of a membership interest in River Region Hospital ("River Region"). River Region had one main asset commonly known as a Certificate of Need ("CON") which allowed it to conduct business as a psychiatric hospital in the Montgomery, Alabama area. Having been in the hospital business for a number of years, Mr. McKenzie was interested in learning more about the sale of the interest in the hospital.

5. After several telephone calls with Mr. Owen who represented the sellers as both an owner and agent to sellers, Mr. McKenzie and Mr. Owen (who was at his home in Destin, Florida at the time) met for an extended lunch in Opp, Alabama. They discussed in detail the sale of the interest in the hospital.

6. During the negotiations, Mr. Owen, working on behalf of and as agent for the sellers/ counter-defendants, made certain representations to Mr. McKenzie which he knew or should have known were false. Mr. McKenzie reasonably relied upon these false representations. These representations were directly related to the demand for the sale of the unregistered security (interest in River Region), the actual value of the unregistered security, and the ability to re-market the unregistered security if Gilliard Health needed to sell such after closing.

7. Mr. Owen made numerous false material representations to Mr. McKenzie which induced Mr. McKenzie into making an offer on the hospital which would have not been offered had the misrepresentations not been made to Mr. McKenzie.

8. Mr. Owen falsely asserted to Mr. McKenzie that a third party was very interested in the interest in the hospital, that Mr. Owen did not like the third party, and that he wanted Mr. McKenzie to be the buyer for the hospital. Mr. Owen made direct statements that Mr. McKenzie relied upon in this regard. Mr. Owen falsely asserted that the potential third party buyer had made an offer in the range of $900,000 ultimately offered by Mr. McKenzie. Mr. Owen carefully coaxed Mr. McKenzie into making a grossly inflated offer for the interest by creating a non-existent offer. Mr. McKenzie offered $900,000 only after being told that his amount would be within the range of the potential third party buyer. Had Mr. Owen been truthful with Mr. McKenzie, he would have never been able to deceptively coax Mr. McKenzie into making an offer that was grossly overinflated. In reality, it is now believed that the potential third party buyer made an offer of approximately $350,000, far less than ½ of what Mr. Owen was able to deceptively extract from Mr. McKenzie.

9. Mr. McKenzie would have never made such offer to buy the interest without the representations being made by Mr. Owen. Mr. McKenzie was made to believe that he was ***just edging out*** another potential buyer for the sale which would have helped determine a real fair market value for the interest when in fact Mr. Owen knew that he had tricked Mr. McKenzie into paying vastly more than the other offer of $350,000. This type of misrepresentation is much more than mere "puffery" as Mr. Owen made a false representation to Mr. McKenzie regarding the offer by the potential third party buyer. Mr. Owen clearly stated that the other offer was within the range of Mr. McKenzie's offer of $900,000. This misrepresentation by Mr. Owen was fraudulent and misleading. The misrepresentation clearly shows there was no meeting of the minds between buyer and seller. Mr. McKenzie made the offer to purchase the interest in the hospital based upon Mr. Owen's misrepresentation that the potential third party buyer ($350,000 offer) would step into the shoes of Mr. McKenzie *if* Gilliard Health ever wanted to sell its interest in the hospital. Mr. McKenzie relied on this misrepresentation by Mr. Owen and did so in a reasonable manner. Mr. Owen knew or should have known that the third party buyer would never pay $900,000 for the interest if they had valued it at approximately $350,000 with their own offer.

10. In pitching the deal to Mr. McKenzie, Mr. Owen also made the representation to Mr. McKenzie that he would be in a unique position to partner with Baptist Health ("Baptist"),that Baptist was 100% behind River Region, and the operation of the psychiatric hospital. Unbeknownst to Mr. McKenzie, and almost certainly known to Mr. Owen as he had been intimately involved with River Region and Baptist, the River Region project was and remains a controversial project for Baptist which lacks unanimous board support. Since Baptist's participation and support is

necessary to the successful operation of River Region, this knowing omission of material fact by Mr. Owen was a material misrepresentation. Mr. Owen knew or should have known that support was lacking at Baptist to make River Region a viable and successful entity and that knowledge was intentionally omitted by Mr. Owen. Had Mr. McKenzie been informed that Baptist would not support River Region or that its board was not unanimously in favor of the entity, Mr. McKenzie would not have purchased the entity. Without Baptist's support of River Region, the entity is a liability instead of an asset. Mr. Owen eagerly sold this overinflated interest in River Region to a misinformed and defrauded Gilliard Health.

## CLAIMS

## VIOLATIONS OF THE ALABAMA SECURITIES ACT

11. Gilliard Health and Mr. McKenzie incorporate by reference all allegations contained in paragraphs 1-10 of their counter claim.

12. Gilliard Health and Mr. McKenzie purchased an interest in a security under Alabama Law. The sellers, Plaintiffs/ Counter- Defendants sold the unregistered security in violation of Alabama law. The misrepresentations of fact and fraud discussed in the preceding paragraphs sufficiently form a basis for claims for violations of the Alabama Securities Act.

13. The security was sold in the State of Alabama, was located in the State of Alabama, and was purchased by an Alabama Corporation owned by an Alabama resident. The substantive securities laws of the State of Alabama should apply to this transaction.

14. Section 8-6-17, et seq. of the Alabama State Code states:

> (a) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to:
>
> (1) Employ any device, scheme, or artifice to defraud;
>
> (2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.
>
> (b) It is unlawful for any person who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise,
>
> (1) to employ any device, scheme, or artifice to defraud the other person,
>
> (2) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person,
>
> * * *
>
> (4) to engage in dishonest or unethical practices as the commission may define by rule.

15.     Violations of the Alabama Securities Act allows statutory rights and remedies to buyers such as Gilliard Health and Mr. McKenzie who have been victims of illegal acts and violations of said law. Specifically, if it is determined that the sellers of this security violated Alabama law, Mr. McKenzie and Gilliard Health are entitled to recover the amount paid for the security together with 6% interest per year from the date of payment, court costs and reasonable attorney fees less the amount of income

received on the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it, and interest at 6%. It is also believed that Mr. Owen received a commission on the sale of the unregistered security and as such is bound to be liable for the actions of a person found to be guilty of the sale of an unregistered security. Gilliard Health is also entitled to rescind the purchase based upon the fraudulent sale of the unregistered security.

## NEGLIGENT AND INTENTIONAL MISREPRESENTATION

16. Gilliard Health and Mr. McKenzie incorporate by reference all allegations contained in paragraphs 1-14 of their counter claim.

17. Counter Defendants, directly and through their agent, made representations of material facts they knew or should have known were false. The sellers, including Mr. Owen, knew that the representations made to Mr. McKenzie and Gilliard Health were false when they were made or were made recklessly without knowing whether the representations were true or false.

18. The Counter Defendants, directly and through their agent, intended that Mr. McKenzie and Gilliard Health rely upon the representations and knew that Mr. McKenzie and Gilliard Health would act in reliance on those representations. As a result of the reliance on the misrepresentations made by Counter Defendants and their agent, Gilliard Health and Mr. McKenzie have sustained substantial damages.

## MISREPRESENTATION BY CONCEALMENT

19. Gilliard Health and Mr. McKenzie incorporate by reference all allegations contained in paragraphs 1-17 of their counter claim.

20.     Counter Defendants, directly and through their agent, concealed and suppressed material fact. The Counter Defendants and their agent were under a duty to disclose facts to the plaintiff and Counter Defendants and their agent intentionally concealed or suppressed the facts that would have caused Gilliard Health and Mr. McKenzie to act differently.

21.     As a result of the suppression and concealment of facts related to the value and sale of River Region, Gilliard Health and Mr. McKenzie have sustained substantial damages.

**FRAUD**

22.     Gilliard Health and Mr. McKenzie incorporate by reference all allegations contained in paragraphs 1-20 of their counter claim.

23.     Gilliard Health and Mr. McKenzie were defrauded by sellers by actions of Mr. Owen as agent for sellers. Remaining sellers shall be vicariously liable for the actions of their agent Mr. Owen.

24.     Mr. Owen knowingly and fraudulently induced Mr. McKenzie into purchasing an interest for a grossly inflated price which did not represent the true value of the interest. This was accomplished by fraudulently misrepresenting material facts regarding the potential third party offer and the marketability and demand of the interest. This misrepresentation of facts goes beyond simple puffery and enters the realm of fraud. As such, this transaction should be null and void and rescinded by the parties.

**WHEREFORE**, Gilliard Health and Mr. McKenzie request the following relief from this Court:

1. Compensatory damages as a result of the claims described in the above paragraphs and those damages and remedies available pursuant to the Alabama Securities Act;

2. Determination by the Court that the agreements entered into by the parties are null and void and thereby rescinded and to place each party in the position they were in prior to such agreements.

3. Pre-Judgment Interest on the amount awarded;

4. All costs incurred by Gilliard Health and Mr. McKenzie be awarded to them including all court costs and costs for attorney fees, and;

5. All such other relief awarded by the Court.

Respectfully submitted,

**Jones Hawkins & Farmer, PLC**

s/William B. Hawkins III
William B. Hawkins III

Jones Hawkins & Farmer, PLC
150 Fourth Ave. North, Suite 1820
Nashville, TN 37219
(P) 615-726-0050
(F) 615-726-5177
whawkins@joneshawkinsfarmer.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

  I certify that a true and correct copy of the foregoing has been served by CM/ECF system to the following registered counsel of record and if not registered, via U.S. Mail, on this 12th day of May, 2010:


Aubrey B. Harwell
Jeff H. Gibson
Neal & Harwell, PLC
2000 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219
615-244-1713


            <u>s/ William B. Hawkins III</u>
            William B. Hawkins III